

Denied as moot. See Doc. **36**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION, AT CINCINNATI

|  |  |  |
|---|---|---|
| PATRICK KLANCAR, | : | Case No. 1:20-cv-00730-MWM-KLL |
| **Plaintiff,** | : | **Judge Matthew W. McFarland** |
| v. | : | **Magistrate Judge Karen L. Litkovitz** |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, | : |  |
| **Defendant.** | : |  |

---

### PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Plaintiff Patrick Klancar brought this case under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 29 U.S.C. 1132(a)(1)(B), which allows a participant in an ERISA plan to make a claim for benefits due under the plan. Plaintiff respectfully moves for Judgment on the Administrative Record pursuant to *Wilkins v. Baptist Healthcare System*, 150 F.3d 609 (6th Cir. 1998). The motion is supported by the attached memorandum and the administrative record.

Dated: July 13, 2021

Respectfully Submitted,

/s/ Claire W. Bushorn Danzl
Claire W. Bushorn (Oh Bar No.: 87167)
THE BUSHORN FIRM, LLC
810 Sycamore Street
Cincinnati, Ohio 45202
Phone: (513) 827-5771
Fax: (513) 725-1148
cbushorn@thebushornfirm.com

*Attorney for Plaintiff*

1

## MEMORANDUM IN SUPPORT

### I.         INTRODUCTION

Plaintiff, Patrick Klancar, brought this action under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) for past due benefits due to him under the Robert Bosch Automotive Steering LLC LTD Plan. Klancar participated in the Plan by virtue of his employment as a controller/financial analyst when he became disabled. (AR 0978, 1374)[1] Hartford administered and paid claims under the Plan. Because no plan document grants discretionary review, the Court's review is *de novo*.

Klancar is disabled due to a complex and interrelated set of genetic/endocrine conditions causing labile, or poorly controlled, Diabetes Mellitus, with polyneuropathy on the right side of his body[2], nonalcoholic fatty liver disease (NASH)[3], and other related conditions. As a result, Klancar suffers from fatigue, brain fog, complications of neuropathy on the right side of his body, resulting in gait problems, sensory deficit, weakness, and pain, as well as incontinence, fatigue, and abdominal pain. The nature and extent of Klancar's conditions are amply documented in the medical records, lab results, observations of Klancar's many physicians, prescriptions, and statements from his physicians. By contrast, Hartford has no evidence to support its decision to deny Klancar's claim other than conclusive opinions by paid file reviewers ignoring the substantial information in the record. On de novo review, the Court can readily conclude that Klancar is disabled from performing the Material and Substantial duties of his own, or any other sedentary

---

[1] The references ("AR") are to the sequentially-numbered pages of the administrative record (referred to in the footer of each page as "HART00001-02451") that the Defendant filed with the Court.
[2] Diabetic Neuropathy is a type of nerve damage that can occur if you have diabetes; high blood sugars can injure nerves throughout the body, and frequently causes pain and numbness in the legs and feet and hands, as well as digestive and urinary tract problems. Diabetic neuropathy is permanent. (AR 2062-2067)
[3] NASH causes symptoms of fatigue, weakness, pain in abdomen and is caused by insulin resistance and type 2 diabetes, high triglycerides, and/or metabolic syndrome. (AR 2072-73)

occupation. Judgment should be entered for Klancar and the Court should direct Hartford to pay Klancar's claim.

## II.      FACTS

### A. The LTD Plan

As an employee of Robert Bosch Automotive Steering, LLC, Klancar participated in the Plan established by Robert Bosch Automotive Steering, LLC. Hartford administers and pays the benefits made to participants under the Plan. (AR 1897) Under the plan terms, participants are eligible to receive sixty (60) percent of their pre-disability monthly income if they "1) become disabled while insured under the policy; 2) are disabled throughout the [180 day] Elimination Period; 3) remain Disabled beyond the Elimination Period; and 4) submit Proof of Loss to [Hartford]." (AR 1902)

"**Disability or Disabled**" means You are prevented from performing one or more of the Essential Duties of:

> 1)      Your Occupation during the Elimination Period;
> 2)      Your Occupation, for the 24 months following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
> 3)      after that, Any Occupation."

(AR 1911) "**Essential Duty**" means "a duty that: 1) is "substantial not incidental; 2) is fundamental or inherent to the occupation; and 3) cannot be reasonably omitted or changed." (AR 1911) The "ability to work the number of hours in Your regularly scheduled workweek is an Essential Duty." (*Id*.) "**Your Occupation**" means "Your Occupation as it is recognized in the general workplace". (AR 1914) "**Any Occupation**" means "any occupation for which You are qualified by education, training, or experience, and that has an earning potential greater than the lesser of: 1) the product of Your Indexed Pre-disability Earnings and the Benefit Percentage; or 2) the Maximum Monthly Benefit." (AR 1911)

3

The Plan specifies that Hartford may require claimants be examined by a physician, vocational expert, a functional expert, or other medical professional in order to have benefits approved. (AR 1908)

### B. **Klancar's Sedentary Occupation**

Klancar worked for Robert Bosch Automotive Steering LLC as a controller/financial analyst where he oversaw accounting and finance. (AR 0978, 1374).  At the time of his disability, Klancar's Own Occupation was considered Financial Analyst II, a sedentary job requiring him to sit for extended periods during a workday, use the keyboard and computer constantly. (AR 57, 256, 2371) According to the Department of Labor's publication, financial analysts must analyze significant amounts of financial data affecting investment programs for private individuals, providing expert advice on the management and investment of significant amounts of money; make decisions and solve problems, process information, and monitor and review data and detect problems. *See* Occupational Information Network, Financial Analysts.(*Available at* https://occupationalinfo.org/onet/25315.html)(last accessed July 8, 2021). Furthermore, under the Plan's terms, working regularly and consistently for forty hours per week is a material and substantial duty. (AR 1911)

The Plan's definition of disability changes effective April 11, 2019, five months after Hartford stopped paying benefits. (AR 1883) Hartford assessed the "low likelihood" that he would be qualified to perform occupations other than his own due to the high degree of specialization and the potential earnings requirement under the Plan. (AR 433) His background is limited to financial analyst positions, all of which are sedentary jobs requiring the ability to sit for up to 8 hours and use a keyboard. (*Id*.)

### C. **Klancar's Medical Conditions**

Klancar suffered a stroke in November 2015. (AR 723, 1139) He was able to recover mostly from the stroke, but was hospitalized when he went into ketoacidosis and pancreatitis, due to late onset Diabetes Mellitus, with marked elevation of triglycerides, cholesterol, and blood sugar levels in June 2016. (AR 636, 640) Following hospitalization and diagnosis of Diabetes Type II Mellitus, Klancar complained of increased fatigue, headache, and abdominal pain. (AR 629) The medications prescribed for blood pressure caused elevated potassium levels and the medications for hyperlipemia caused edema; and the medications prescribed for stroke caused arthritic pain throughout his body. (AR 629) Dr. Littrell treated Klancar for diabetes, headache, dizziness, abdominal pain and blurred vision on August 4, 2016, and he reported increased fatigue, fogginess, difficulty focusing at work, blurred vision intermittently, increased abdominal pain, left posterior heel pain (AR 660-61) Klancar was diagnosed with Type II Diabetes Mellitus with hyperlipemia; abdominal pain in the right upper quadrant; hypertriglyceridemia; chronic nonintractible headache; essential hypertension; and metabolic pancreatitis. (AR 661-62) Dr. Brozovic, gastroenterologist, saw Klancar soon after about the abdominal pain, noting on exam Klancar's blood pressure was elevated and he exhibited tender abdomen and right upper quadrant on palpitation. (AR 663, 667) An ultrasound confirmed lesion on the liver with fatty deposits. (AR 669) Klancar also began seeing endocrinologist Dr. Eid about his diabetes. (AR 683) Klancar noted arthralgias, back pain, myalgias and stiff neck; cold intolerance; flank pain; palpitations and leg swelling; decreased activity, fatigue, fever, trouble swallowing; sleep disturbances; sleep apnea on August 30, 2016. (*Id*.) Klancar was admitted to the hospital again on September 21, 2016 due to chest pain and palpitations. (AR 688, 694) Testing revealed elevated coronary calcium score, and elevated blood pressure, glucose, and hemoglobin A1C levels, all of which indicated his diabetes was not controlled despite insulin use. (AR 694, 697) Klancar saw Dr. Eid on September 28, 2016 again,

5

who noted the following symptoms were associated with his recent diagnosis of Diabetes; abdominal pain, arthralgias, chills, coughing, diaphoresis, fatigue, fever, headaches, myalgias, nausea, numbness, and weakness. (AR 707, 711)

Mr. Klancar had to stop working on October 11, 2016 due to complications from the Diabetes Type II, neuropathy, fatigue, and brain fog. The next day he saw neurologist, Dr. Dalton, about his fatigue and brain fog, reporting word finding difficulties, short term memory loss, fatigue, and trouble with basic calculations. (AR 723) Dr. Dalton noted Mr. Klancar stuttered with halting speech and noted diminished recall and decreased sensation in the right arm and leg; and reduced reflexes of 2/4 bilateral biceps, triceps, brachioradialis, patellar, Achilles. (AR 727, 729) Dr. Dalton referred Mr. Klancar for neuropsychological evaluation and brain MRI. (Id.) The brain MRI was normal and the neuroevaluation was inconclusive because Klancar fell asleep during the exam. (AR 1100, 2373) On January 3, 2017 Mr. Klancar saw Dr. Khoury, cardiologist, again, noting that he continued feeling lightheaded, had muscle pain, and headaches. (AR 736-737) Dr. Khoury ordered angiography for Mr. Klancar, which revealed abnormal results with Coronary Artery Disease. (AR 738, 743, 747) On February 1, 2017 Dr. Eid again noted Mr. Klancar's associated symptoms of abdominal pain, arthralgias, chills, coughing, diaphoresis, fatigue, fever, headaches, myalgias, nausea, numbness, and weakness. (AR 746) Mr. Klancar's blood pressure was abnormally high at the appointment and he was diagnosed with familial (e.g. genetic) hypercholesterolemia. (AR 752) And again on June 13, 2017, Dr. Eid noted the same symptoms including fatigue, muscle pain and weakness, right sided neuropathy, chest pain and palpitations, flank pain, endocrine symptoms, back pain and neck stiffness, dizziness and headaches. (AR 758) Klancar diagnoses were uncontrolled diabetes mellitus with diabetic neuropathy, unspecified long term insulin use status, mixed dyslipemia. (AR 760) Not long after, Dr. Khoury, cardiologist,

diagnosed Klancar with moderate stenosis. (AR 762) Klancar's blood pressure remained high, he continued having dizziness, palpitations, memory loss, and fatigue among other symptoms. (AR 763)  On August 21, 2017 Klancar was treated by Dr. Krebs at Primary Health Solutions. (AR 1228) At this visit, Klancar reported cough and throat hoarseness related to the swallowing problems; paresthesia and numbness in his right arm and leg with high blood pressure. (AR 1230-31) A month later, Dr. Krebs treated Klancar for a wound in his right foot, at which time a diabetic foot exam finding a loss of protective sensation in Klancar's right foot. (AR 1236) On October 27, 2017 Dr. Krebs again noted right-sided sensory deficit, Type II Diabetes, hypertension, history of stroke, Labile blood glucose, functional memory problem, mixed hyperlipemia, obesity, and filled out an Attending Physician Statement for Mr. Klancar to provide to Hartford. (AR 1239) The physical exam noted Klancar's mildly impaired short-term memory, decreased sensory in right lower extremity, poor insight. (AR 1242) On November 29, 2017 Dr. Krebs noted Klancar's diabetes was continuing to worsen, with labile sugar levels, increased fatigue, and hypertension. (AR 1246) Klancar explained the blood sugar levels highs and lows were making him feel exhausted. (AR 1247) On physical exam, Klancar had antalgic gait, sensory deficits on the right side of his body. (AR 1249) Dr. Krebs filled out another Attending Physician Statement for Klancar. (AR 1247) In it, Dr. Krebs stated Klancar became disabled due to Type II Diabetes with history of stroke, hypertension, and hyperlipemia and, as a result, experienced "labile diabetes poorly controlled, suffering difficulty residual right sided neuropathy from stroke, neurological deficit, right sided sensory deficit and right sided foot drop." (AR 948-949) On January 22, 2018 Dr. Khoury, cardiologist, saw Klancar again. (AR 772) Dr. Khoury noted Klancar's postural dizziness, uncontrolled Type II Diabetes Mellitus with diabetic neuropathy, with long term insulin

use, metabolic pancreatitis. (AR 772) On exam Dr. Khoury noted fatigue and weakness, arthralgias and myalgias in his back and blood pressure was high. (AR 779)

On January 24, 2018 Mr. Klancar established care with another endocrinologist Dr. Cohen, referred by Dr. Eid.(AR 1270) Dr. Cohen described Klancar as having "very difficulty to control diabetes in the context of a history of severe hypertriglyceridemia and hypercholesteremia, with a stroke in 2016 TG's high at the time and several episodes of pancreatitis." (AR 1273) Klancar's symptoms were upset stomach, feeling chronically fatigued, weak, with no quality of life since developing these symptoms. (*Id*.) Klancar's use of insulin caused constant burning sensation, with numbness, tingling, and burning on the right side. (Id.) At the appointment, Mr. Klancar had high blood pressure of 142/92; was obese; diagnosed with hypertriglyceridemia; Type II Diabetes Mellitus with complication, with long-term current use of insulin; history of pancreatitis; secondary diabetes mellitus with ketoacidosis; hypothyroidism; and essential hypertension. (*Id*.) Dr. Cohen noted Mr. Klancar likely has difficulty managing complex insulin regimen and was "extremely insulin resistant" (AR 1276) More blood work on February 8, 2018 revealed elevated fructosamine; Hemoglobin A1C; elevated glucose; highly elevated triglycerides and low HDL. (AR 1289-1292)

Klancar established care with Dr. Jay Rissover as his primary care doctor in February 2018. (AR 408) On April 9, 2018 Dr. Rissover noted Klancar's diagnoses as coronary artery disease, cerebral infarction, chronic fatigue syndrome, diabetic polyneuropathy associated with Type II Diabetes Mellitus, essential hypertension, history of pancreatitis, hypothyroidism, migraine, hyperlipemia, NASH, dysphagia Type II Diabetes, and Vitamin D Deficiency. (AR 408)

On May 9, 2018 Dr. Cohen saw Klancar again, explaining Klancar's muscle pain was caused by insulin and statin-fibrate interaction. (AR 1310) Klancar's Hemaglobin A1C was at 8.3, his HDL was low, and triglycerides were extremely high. (AR 1316-17, 1323-24)

Klancar saw Dr. Rissover again for an appointment and to complete another APS. (AR 982-983) In order to complete the APS, Dr. Rissover examined Klancar for 25 minutes in person. He advised Hartford that Klancar was disabled from Diabetes with neuropathy, fatigue, and experienced "subjective symptoms" of fatigue, dizziness, muscle pain. (AR 982) Dr. Rissover noted "objective physical findings" for his conditions were "labs confirming uncontrolled diabetes", and listed a recent A1C level of 8.1. (Id.) On evaluation, Dr. Rissover found Klancar could not sit or stand or walk for more than one hour at a time; with the ability to sit up to 6 hours. (AR 983) In addition, Dr. Rissover stated Klancar could not bend at the waist more than occasionally, could not kneel, crouch, climb, or balance at all, occasionally drive, and could occasionally use fine or gross manipulation, including to use a keyboard, occasionally reach above his shoulder, or reach below his shoulders. (AR 983) Dr. Rissover stated that he believed these restrictions to be for Mr. Klancar's lifetime. (*Id.*)

Lab work shows that Klancar's diabetes and related conditions were not under control through 2018 and into 2019. Blood glucose levels were consistently elevated: 181 on July 30, 2018, 166 on September 17, 2018; and 249 on February 26, 2019. (AR 1515) Triglycerides were elevated when tested: 886 on July 30, 2018 and 428 on September 17, 2018. (Id.) HDL cholesterol was low; and Hemoglobin A1C was elevated: 8.4 on July 30, 2018, September 17, 2018; and 7.6 on February 26, 2019. (Id.) Office visit notes from July 30, 2018 also support this. (AR 1516, 1519, 1522) Klancar exhibited fatigue, arthralgias, gait problem, confusion, and decreased concentration, and Dr. Rissover noted that his treatment was "very complicated", Klancar reported

being in a "daze". (AR 1519, 1522) Dr. Rissover noted Klancar's Diabetes Melitus was out of control. (AR 1522, 1524)

In November 2018 Klancar reported a worsening of symptoms. This is reflected in November 13, 2018 records in which Klancar asked Dr. Rissover for an endocrinologist referral, complaining that the Crestor makes "his whole body hurt" (AR 1751, 1757) Dr. Rissover evaluated Mr. Klancar for 25 minutes before filling out another APS form for Hartford dated November 16, 2018 (AR 1530, 1538, 1757) The November 16, 2018 APS continued to support Klancar's disability, noting Klancar's worsening symptoms. (AR 1376) Dr. Rissover provided that Klancar remained disabled due to Diabetes with Neuropathy, complicated by fatigue, dizziness, muscle pain; Objective Physical Findings included lab results; and A1C of 7.2 on September 17, 2018 showing his Diabetes Type II remained uncontrolled. (*Id*.). In addition, Dr. Rissover explained again that he did not expect Klancar to return to work, that he continued daily glucose testing, insulin, and medication prescriptions. (*Id*.) At this time, Klancar's triglycerides, blood glucose, A1C levels remained abnormally high. (AR 1515-16) Consequently, Klancar reported increased fatigue, muscle aches, and neuropathy due to long term insulin use, arthralgias, difficulty concentrating, dizziness, incontinence, abdominal pain, noting the symptoms occur frequently. (AR 1516, 1519, 1522, 1524-32) As a result, Dr. Rissover identified in the APS that Klancar could not sit or stand for more than 1 hour at a time for up to 3 hours in a day (down from 6 hours total); walk for up to 1 hour at a time for up to 3 hours in a day (down from 6 hours total); never bend, kneel, crouch or climb; occasionally balance and drive; lift up to 20 pounds occasionally, occasionally fine and gross manipulate and occasionally reach above his shoulders and never reach below shoulder at desk level. (AR 1377)

Klancar returned on February 26, 2019 so Dr. Rissover could evaluate him and complete the updated APS for Hartford. (AR 1547) Dr. Rissover spent 25 minutes with Klancar, finding that Klancar's diabetes with neuropathy and fatigue render Klancar unable to walk, sit, or stand for more than one hour at a time for a total of three hours, and he could occasionally drive, occasionally lift 20 pounds, occasionally engage in fine manipulation (fingering keyboard), occasionally balance, and occasionally engage in gross manipulation (grip/grasp handle). (AR 1391-92, 1547-48, 1551) On exam, Dr. Rissover noted Mr. Klancar was positive for fatigue without activity changes, positive for gait problem. (AR 1550) His blood pressure was elevated. (Id.) Klancar returned to see Dr. Rissover again on April 8, 2019 to have him evaluate him again for another APS. (AR 1555-58) Dr. Rissover noted Klancar's retrogression, determining again Klancar was unable to walk, sit, or stand for more than one hour at a time, for up to one hour total, occasionally drive, and occasionally lift 20 pounds, bend kneel or crouch due to his joint pain, balance problems, and neuropathy; unable to climb; unable to balance or "walk fast", engage in fine manipulation (fingering, using the keyboard) or gross finger manipulation or reach due to his diabetes with neuropathy and fatigue. (AR 1508) Dr. Rissover also noted Klancar's anxiety and short-term memory loss. (Id.) Klancar's gait problems, neuropathy, fatigue and elevated blood pressure are also noted in the contemporaneous medical records. (AR 1557-58)  Records from treatment throughout April and May 2019 support Klancar's continuous disability as he consistently reports fatigue; the restricting conditions were based on the Diabetes Mellitus, polyneuropathy, short term memory loss. Dr. Rissover felt Klancar's prognosis was poor and was referred to cardiology due to the increased fatigue. (AR 319, 1931) Dr. Martin, cardiologist ordered a fasting lipid test which revealed continued abnormally high results. (AR 1959, 1960)

D. **Hartford's Reviews of Klancar's LTD Claim.**

Hartford approved Mr. Klancar's STD claim on September 25, 2017 for the full 26-week period, from October 11, 2016 through April 10, 2017, finding he was unable to perform his own occupation at that time under the STD Plan. (AR 11) Once referred to the LTD unit, Hartford again found he was unable to perform his own sedentary occupation from October 11, 2016 through August 6, 2018. (AR 381) Specifically, Hartford's nurse determined Drs. Krebs and Rissover's restrictions and limitations were supported based on Klancar reports of neuropathy because he would not be able to perform repetitive fingering on a consistent basis or sit for long enough periods due to neuropathy in his lower extremities. (AR 381) Notably, the nurse found Klancar's "subjective information" regarding balance/gait problems, right sided neurological deficits, and swallowing problems were all supported. (AR 381) Hartford's manager agreed with the medical reviewer's opinion, noting that Mr. Klancar suffers "significant impairment due to diabetic neuropathy". (AR 379) The medical case reviewer recommended Hartford review updated medical records in six months. (AR 375) Klancar notified Hartford that he was attempting to work part-time as a substitute teacher when Hartford notified him that his LTD claim was approved, at which point Hartford asked that he submit proof of income. (AR 374)[4] Hartford stopped issuing monthly LTD benefits to Klancar in November 2018 on the basis that he did not submit "Proof of Loss" under the Plan. (AR 374) Even after it received the paystubs and determined no offset was appropriate, Hartford continued to deny benefits under the guise that it needed more information. (*See* AR 1876-81) Hartford reopened the claim and sent Klancar's file to occupational medicine doctor, Dr. Cholanda Hill, and Dr. Yuppa, a psychologist on July 9, 2019. (AR 1965)

---

[4] Under the Plan, a participant remain totally disabled while working in another occupation and earning less than 20% of their pre-disability income. (AR 1918)

12

Dr. Chalonda Hill reviewed the file and spoke with Dr. Yuppa about Klancar. (AR 1973, 1982) Dr. Hill concluded: "[a]lthough the claimant has multiple chronic diseases, there is a lack of clinical evidence such as abnormal exam findings, hospitalizations, etc. to support functional impairment." (AR 1973) Dr. Yuppa, a psychologist, reviewed Mr. Klancar's file on August 27, 2019 and opined that Mr. Klancar was not disabled from a psychiatric perspective, just as Mr. Klancar and Dr. Rissover stated to Hartford. (AR 302, 1983) Both concluded that Klancar was "capable of working full time 8-hour workdays for 40 hours per week without restrictions and/or limitation since 10/11/16." (*Id*.) Hartford issued a denial letter on September 19, 2019, explaining that it relied on Dr. Hill and Dr. Yuppa's file review and concluded Klancar is able to work in an office environment, which could include sitting or standing for the majority of the day" but did not comment on its prior finding that Klancar could not use a computer or keyboard. (AR 2014)

Klancar submitted a timely appeal through his attorney with additional records for Hartford's review. (AR02049-20300) Klancar included updated records showing his treatment for NASH with the gastroenterologist Dr. Sun and continued treatment with Dr. Rissover. (AR 2054-2300) Dr. Sun noted Klancar's abdominal bloating, possible gastritis, nonalcoholic fatty liver disease, and recurrent pancreatitis. (AR 2057) In addition, Klancar underwent a physicial with Dr. Rissover on June 11, 2019. (AR 2173) At the physical, Dr. Rissover documented Klancar's ongoing problems. Dr. Rissover referred Mr. Klancar to endocrinology due to increased fatigue and to physical therapy due to the rotator cuff tear. (AR 2176)

When reviewing the appeal, Hartford opted against obtaining an independent medical exam ("IME") again. (AR 226) Instead it had Dr. Arousiak Varpetian Marian review Klancar's file. (AR 2379) Dr. Marian offered sweeping conclusions, incorrectly stating Klancar's "diabetes remained stable without much fluctuations in blood glucose"; "no evidence of any impairment related to

diabetes" and concluded his diagnosis of diabetic neuropathy was not supported. (AR 2388) Consequently, he opined Klancar had no restrictions or limitations resulting from diabetic neuropathy as of January 1, 2018. (AR 2388) Dr. Marian also concluded "no medical or neurological etiology was found to account for the complaint" of fatigue, and therefore no restrictions or limitations. (AR 2388) Klancar asking for the opportunity to review any new evidence considered, but Hartford refused and issued a denial based on the report before allowing Klancar's physician's to review. (AR 2391)

### III.     <u>ARGUMENT</u>

#### A.   <u>The Applicable Standard of Review Is *De Novo*</u>

The Supreme Court has stated in the ERISA context the standard of review is *de novo* unless the benefit plan gives the plan administrator discretion to determine eligibility for benefits or construe the terms of the Plan. *Firestone Tire and Rubber Co., v. Burch*, 489 U.S. 101, 115 (1989). Here, the Plan does not grant the plan administrator with discretionary authority. (AR 2403-2444) To the extent Hartford claims the mandatory "ERISA Information" accompanying the Plan contains discretionary language, the Supreme Court holds that this is not part of the Plan document. *See Cigna Corp. v. Amara*, 563 U.S. 421, 436 (2011)(holding that the ERISA-required notices attached to the summary plan description does not constitute the plan) Accordingly, the *de novo* standard applies. When conducting a *de novo* review, the district court takes a "fresh look" at the administrative record, without deference to the administrator or a presumption of correctness. *Wilkins v. Baptist Healthcare System, Inc*., 150 F.3d 609, 619 (6th Cir. 1998); *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990) In other words, *de novo* review does not result in the Court reviewing someone else's decision; rather it makes an independent decision. *Krolnik v. Prudential Ins. Co. of Am*., 570 F.3d 841, 844 (7th Cir. 2009)

### A.  **The Evidence  Establishes Klancar Is Disabled From His Regular Occupation.**

While courts may not categorically "conclude that the opinion of treating physicians is entitled to more weight than that of non-treating physicians"; "'Plan administrators . . . may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Bruton v. Am. United Life Ins. Corp.*, 798 F. App'x 894, 904 (6th Cir. 2020)(citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830 (2003). Furthermore, "a claimant's documented limitations may not simply be dismissed as being 'subjective exaggerations,' particularly where—as here—the individuals purporting to make that credibility determination did not meet or examine the claimant."(Id.)(citing *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296-97 (6th Cir. 2005)).

Here, the preponderance of the evidence readily supports the conclusion that Klancar is unable to perform the material and substantial duties of his own – or any – occupation due to the combination of his uncontrolled diabetes, diabetic neuropathy, hypertryglicemia – which results in repeated bouts of pancreatitis, metabolic diseases causing nonalcholohic fatty liver disease, and genetic high blood pressure. Mr. Klancar consistently noted the effects of these conditions: diabetic neuropathy causes pain, sensory loss, and numbness on the right side of his body, with demonstrated gait problems. (See AR 408, 632,272, 746, 758, 982, 1230-31, 1234, 1236, 1239, 1242, 1249, 1273, 1316-17, 1516, 1519, 1522, 1524-32, 1376, 1550, 1508, 1557-58, 2092) As a result, he can not use his hands to keyboard and sitting for extended periods causes pain and discomfort in his legs; nor can he walk or stand for extended periods. Indeed, this is what Hartford found when it reviewed the medical evidence and determined he could not work in his own sedentary occupation due to the diabetic neuropathy. (AR 381; see also 379)(Klancar suffers "significant impairment due to diabetic neuropathy", unable to sit or use keyboard) In addition, the evidence supports overwhelmingly that the combination of his uncontrolled diabetes –

15

resulting in soaring blood glucose levels, and fatty liver disease (NASH), cause Klancar to suffer from chronic fatigue, dizziness, brain fog, word finding problems, and short term memory problems. (AR 723, 727, 746, 729, 758, 763, 772, 779, 982, 1239, 1242, 1246, 1247, 1273, 1276, 1391-92, 1376, 1516, 1519, 1522, 1524-32, 1550, 1557-58, 2088, 2091, 2373) This prevents him from being able to consistently work on a full-time basis because he needs to lie down frequently. (AR 333, 2372-73) Given that his blood glucose and triglyceride levels become wildly high, Klancar would not be able to engage in the complex analysis or perform financial calculations necessary for his occupation or any other occupation for which he could expect to earn an income close to his pre-disability income. (AR 1391-92, 342, 333) Moreover, the evidence overwhelmingly shows that Mr. Klancar suffers muscle pain and weakness throughout his body as a result of the various medications he is prescribed in attempt to control diabetes and keep triglycerides and cholesterol levels down and as a result of NASH. (See, e.g. AR 332, 1310, 1751, 1757, 2055, 2072) Finally, as Mr. Klancar explained, diabetic neuropathy has also resulted in incontinence; a factor which would surely impair his ability to work in an office setting. (AR 332, 2067, 2371) Dr. Rissover provided four APS statements in a short period of time, along with Dr. Kreb's original APS. (See AR 982-83; 1376-77; 1555-58, 2369-2370) Each APS supports Klancar's inability to sit for long periods, use a keyboard, among other limitations related to brain fog, fatigue, and short term memory issues. (Id.)

Furthermore, Hartford may not ignore the intellectual aspects of Mr. Klancar's occupation, or those for which he would be qualified which would compensate him at 60% of his pre-disability income. *Bruton v. Am. United Life Ins*. Corp., 798 F. App'x 894, 905 (6th Cir. 2020); *Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Employees,* 741 F.3d 686, 702 (6th Cir. 2014) Mr. Klancar's occupation required a high degree of cognitive ability, performing

16

complex financial analyses, communication, vision acuity and accuracy with little room for errors. (AR 57, 256, 2371)[5]

Mr. Klancar's descriptions of his symptoms and how they impair his functioning have remained consistent with the medical records and are overwhelmingly credible. A January 24, 2018 Statement To Dr. Cohen: "unbearable" chronic dizziness and fatigue, bloating and stomach discomfort, "extreme neural discomfort right side since start of insulin use – numbness and increased temperature/touch sensitivity which gives wrong sensation. Right knee gives out at times, right foot numbness, lack of coordination on right side" , "blurred vision", "extreme abdominal discomfort when bending over (tie shoes)", "joint and muscle pain and weakness" (See AR 972-976; 974-75; 1368, 342, 332-33)

**B. Hartford's Paid File Reviewers Impermissibly Make Credibility Determinations Without In Person Examination.**

The medical records overwhelmingly showed Mr. Klancar's diabetes was uncontrollable, that he suffered neuropathy in his right side, gait problems as a result, extreme fatigue, recurring pancreatitis, stomach pain, incontinence, and brain fog. (*See, e.g.* AR 1522)(noting Klancar's diabetes out of control) Hartford's own nurse consultant viewed his subjective complaints to support functional impairment, including balance and gait problems, and the right-sided neuropathy making typing impossible and sitting for long periods painful. (AR 310) This decision was made *without* consideration of Mr. Klancar's brain fog, fatigue, abdominal pain, and reaction to medication, which are also readily apparent from the medical evidence. (*See, e.g.,* AR 332, 1310, 1751, 1757, 2055, 2072)

---

[5] *See also* Occupational Information Network, Financial Analysts. (https://occupationalinfo.org/onet/25315.html)(last accessed July 8, 2021)

Yet, Hartford changed course and without reason or justification decided that Klancar's consistent and credible accounts of inherently subjective complaints were no longer enough. Instead of having Klancar undergo an in person examination, Hartford commissioned three file reviewers, two of which considered Mr. Klancar's physical disabilities.[6] The Sixth Circuit has repeatedly noted that a claimants' documented limitations may not be dismissed as "subjective" where the individuals purporting to make that credibility determination did not meet or examine the claimant. *Bruton,* 798 F. App'x 894, 904 (6th Cir. 2020)(citing *Calvert.*, 409 F.3d 286, 296-97 (6th Cir. 2005)). This is particularly evident where, as here, the administrator had the right to require the claimant to undergo an examination in person. *Id.*; *see also Smith v. Cont'l Cas. Co.,* 450 F.3d 253, 263 (6th Cir. 2006); *Zuke v. Am. Airlines, Inc*., 644 F. App'x 649, 654 (6th Cir. 2016); *Shaw*, 795 F.3d 538, 550 (6th Cir. 2015);

An ERISA administrator's reliance on the lack of objective medical evidence is arbitrary and capricious where the claimant's diagnoses are objectively established but the disabling symptoms cannot be objectively determined. *Guest-Marcotte v. Life Ins. Co. of N. Am.,* 730 F. App'x 292, 302 (6th Cir. 2018)(Where the plaintiff offered proof that she suffers from objectively identifiable condition, which causes subjective symptoms such as pain, insurer may not make credibility determination about plaintiff's complaints of pain without requiring an in-person exam); *Yearger v. Reliance Standard Life Ins. Co*., 88 F.3d 376, 381-82 (6th Cir. 1996)( holding that only medical evidence of a diagnoses of such a condition is necessary to find a disability from such an illness.)

---

[6] Klancar does not state that he has a mental health condition rendering him disabled. Accordingly, Dr. Yuppa's review is not relevant.

1. <u>Dr. Cholanda Hill's Paid File Review Is Critically Flawed.</u>

Dr. Hill made impermissible credibility findings without conducting an in person examination by concluding there is a lack of "objective" or "clinically identifiable" evidence, and both opinions should be afforded little weight in the Court's analysis. Dr. Hill summarized medical records she was provided and asserted:

> the medical records supported the following diagnoses: essential hypertension, type 2 diabetes mellitus, coronary artery disease, diabetic polyneuropathy, mixed hyperlidemia, nonalcholohic steatoaphatis (NASH), hypothyroidism, and obstructive sleep apnea.

(AR 1980) (emphasis added) However, Dr. Hill concluded:

> Although the claimant has an extensive medical history, there is a lack of clinical evidence to support functional impairment or the need for medically necessary restrictions. This includes lack of abnormal clinical exam findings, abnormal imaging studies, or abnormal diagnostic studies.

(*Id.*) Based on this review, she ignored Klancar's consistent complaints of overwhelming fatigue due to uncontrolled diabetes; she acknowledged that he suffered from neuropathy on the right side of his body, but dismissed the effects on that neuropathy on his ability to sit, type, or concentrate. A summary of the inconsistencies in Dr. Hill's report is summarized in Klancar's appeal. (AR 2052) Dr. Hill disregarded Klancar's consistent complaints of pain in his abdomen, causing bloating and the inability to bend over, as a result of nonalchoholic fatty liver disease. Dr. Hill also disregarded his complaints of dizziness, imbalance, and incontinence, symptoms common to diabetic neuropathy. In other words, Dr. Hill agreed with Mr. Klancar's treating doctors that Mr. Klancar suffered from the disabling conditions, but refused to credit the subjective and objective symptoms resulting from these conditions. (*Id*.) Dr. Hill's credibility determination is "entitled to little weight" because she "did a paper review even though the policy gave [defendant] 'the right to have [the claimant] examined by an independent doctor'". *Bruton*, 798 F. App'x 894, 905 (6th

Cir. 2020)(citing *Wagner v. American United Life Insurance Company*, 731 F. App'x 495, 497-98 (6th Cir. 2018)).

Dr. Hill also mistakenly and arbitrarily states the files lacks "clinical evidence to support functional impairment or the need for medically necessary restrictions…[including] lack of abnormal clinical exam findings, imaging studies, or diagnostic studies". Dr. Hill ignores the voluminous evidence supporting his inability to work in his own or any sedentary occupation on a regular and consistent basis, for forty (40) hours per week. In addition, the record is replete with objective evidence supporting Mr. Klancar's disabling conditions. Dr. Hill ignores Mr. Klancar's wildly high blood glucose levels, which his doctors refer to as uncontrollable, and labile. She ignores Mr. Klancar's elevated triglycerides, which contribute to ketoacidosis and pancreatitis. She ignores his observed gait problems, loss of senses in his feet, and pain due to medications and NASH.

### 2. Dr. Marian's File Review Ignores The Substantial Information In The Record

Dr. Marian's paid file review concludes that "the diagnosis of diabetic neuropathy is not supported" based on findings controverted by the evidence. (AR 2388) Each reason Dr. Marian provides to support the conclusion is mistaken. Dr. Marian states there was no evidence Klancar "required urgent treatment or hospitalization for uncontrolled blood glucose". (Id.) Yet, he was hospitalized on numerous occasions. He states "no evidence of any impairment related to diabetes", yet his "out of control" blood glucose levels were causing him regular impairments in his daily functioning. He states "Dr. Rissover's diagnosis of diabetic polyneuropathy" was "not supported by the records" ignoring the volumes of records observing and diagnosing Klancar with diabetic neuropathy. He incredulously states "Klancar did not complain of any neuropathic pain" which, on its face, is blatantly wrong.  (AR 2388)

A file reviewer's inaccurate statements concerning the information it reviewed is a hallmark indicator that the decision is not just wrong, but arbitrary and capricious. See e.g. *Shaw*, 795 F.3d 538 (6th Cir. 2015)(factually incorrect assertions in combination with selectively reviewing a claimant's records supports finding that the plan administrator acted arbitrarily and capriciously); *Zuke*, 644 F. App'x at 653-55 (6th Cir. 2016)("when a plan categorically states that there is no objective evidence when in fact there is such evidence—favorable or not—the plan acts arbitrarily and capriciously")

With respect to Klancar's complaints of fatigue, Dr. Marian concludes "no medical or neurological etiology was found to account for the complaint. No abnormality was found on exam…" (AR 2388) As with Dr. Hill's opinion, Dr Marian's credibility determination is "entitled to little weight" because she "did a paper review even though the policy gave [defendant] 'the right to have [the claimant] examined by an independent doctor'". *Bruton*, 798 F. App'x 894, 905 (6th Cir. 2020)(citing *Wagner v. American United Life Insurance Company*, 731 F. App'x 495, 497-98 (6th Cir. 2018)). Furthermore, Hartford's reliance on the lack of objective medical evidence is arbitrary and capricious because the cause of fatigue in Klancar's case – Uncontrolled Diabetes, hypertriglcemia, and NASH – is well documented. *Guest-Marcotte v. Life Ins. Co. of N. Am.,* 730 F. App'x 292, 302 (6th Cir. 2018)( where the claimant's diagnoses are objectively established but the disabling symptoms cannot be objectively determined arbitrary and capricious to make credibility determination without in person exam). Moreover, Dr. Marian does not address Klancar's repeated complaints of muscle pain, which is also documented in his medical records to be caused by medications. (AR1310, 2054)

Not only is Dr. Marian's review substantively wrong, but Hartford refused to allow Klancar the opportunity to have his physician respond to the report before Hartford issued its final decision

after Klancar explicitly asked for the opportunity to do so. (AR 235) *See, e.g.* 29 C.F.R. § 2560.503-1(h)(4); *Laake v. Benefits Comm.*, No. 1:17cv611-WOB, 2019 U.S. Dist. LEXIS 27310, at *16-17 (S.D. Ohio Feb. 19, 2019)

## IV.    <u>CONCLUSION</u>

The Court should enter judgement in factor of Plaintiff Patrick Klancar, direct Hartford to pay his past due benefits under the Plan from the date of denial to present as Klancar readily establishes he is disabled for his Own Occupation as well as Any Occupation; plus prejudgment interest.

Dated: July 13, 2021                    Respectfully Submitted,

/s/ Claire W. Bushorn Danzl
Claire W. Bushorn (Oh Bar No.: 87167)
THE BUSHORN FIRM, LLC
810 Sycamore Street
Cincinnati, Ohio 45202
Phone:  (513) 827-5771
Fax:  (513) 725-1148
cbushorn@thebushornfirm.com

*Attorney for Plaintiff*